## JOHN B. HUNTER v. ROBERT I. LEE.

1. CONTRACT OF PURCHASE; *False Representation of Vendor; Refusal by Vendee.* Where the owner of a specific chattel represents it to be of a certain quality, and on the basis of such representation contracts to sell and deliver it at a future day, if the purchaser after inspection finds it not to be of the quality represented, and declines on that ground to receive the chattel and complete his purchase, he cannot maintain any action for damages for breach of contract, or for false representations.

2. ———— In such case, by reason of the falsity of his representations the vendor could not compel the vendee to receive the property, nor recover damages for his refusal.

*Error from Shawnee District Court.*

LEE brought suit to recover $1,777.37 balance due on a lot of cattle sold and delivered by him to *Hunter*, and inter-

est on said balance, and also $2,249.87 damages alleged to be sustained by reason of *Hunter's* refusal to receive other cattle under a contract between the parties. The nature of the defense, and the averments of the answer, and instructions given and refused, are sufficiently set forth in the opinion. The jury, at the December Term 1871 of the district court, returned a verdict in favor of *Lee* for $1,777.37 principal, and $159.60 interest, (total, $1,936.97.) Judgment on the verdict, and *Hunter* brings the case here on error.

*Martin, Burns & Case,* for plaintiff in error:

1. The court erred in not giving the instruction to the jury as requested by Hunter. Under the *third* defense in Hunter's answer, this instruction was proper and should have been given. By the reply of Lee to this *third* defense an issue of fact is presented on all of the material averments therein. Such being the fact, we maintain that it was the right of the party making those averments, to have each and all of them passed upon by the jury, when there was evidence offered to the jury, (as the record shows there was in this case,) tending to establish their truth. This instruction simply asked the court to direct the jury to pass upon the several matters put in issue by the pleadings.

The only remaining question, as to this instruction is, does it present the correct rule for the measure of damages for the breach of the contract? On this point we refer the court to *Dana v. Fiedler,* 12 N. Y., 40 to 51; Chitty on Contracts, 393; Benjamin on Sales, 559, 664; Sedgw. on Damages, 274, note 1.

2. The court erred in instructing the jury that "upon the allegations made by defendant Hunter in his answer, and the evidence he has offered," they could not find "that Hunter is entitled to damages for any breach of contract on the part of Lee." By this instruction the jury was prohibited from considering the evidence offered by Hunter in support of his third defense or counterclaim, and also from allowing him damages for any breach of the contract on the part of Lee.

In giving this instruction, the court must have been of the opinion that the *third* defense in Hunter's answer did not set out a cause of action for damages against Lee, and for that reason he could not recover. The only question necessary to be considered by us or passed upon by this court is, whether a cause of action is set out in this answer. The third defense sets out the parties to the contract, the consideration, the assent of the parties, and the subject-matter of the contract, or what the parties to it propose as its effect; these are all the essentials of a legal contract. (1 Parsons on Cont., ·8.) It also sets out an agreement that the property in the subject-matter should pass from the vendor to the vendee for a consideration given, and promised to be given, by the vendee, a part payment of the consideration, and an agreement on the part of Lee to deliver the cattle at a certain future time. These are all the essentials of a sale. (1 Parsons, 435.) The answer also sets out a sale of cattle by sample. This in effect is a sale with warranty, that the residue of the cattle were equal to the sample. (Chitty on Contracts, 400.) The answer also sets out that by the terms of the agreement, Lee was to deliver cattle corresponding with the sample shown, on a day certain before payment. In that case it was only necessary for Hunter, in an action for non-delivery, to aver that he was ready and willing to receive and pay for the cattle according to contract, and a failure on the part of Lee to deliver the kind of cattle he agreed to. 1 Parsons, 449; 5 N. Y., 155; 20 Barb., 42; 1 Hill, 519; 46 Penn. St., 286.

The payment of the money by Hunter was not an act necessary to be done before the cattle were furnished, and his engagement was an independent covenant or agreement: 2 Johns., 145; 10 Johns., 204; 21 Pick., 438. Where a party fails to deliver the property according to agreement, it is a breach of his contract, for which an action will lie: 4 E. D. Smith, 14; 7 Bosw., 515; 34 Barb., 204; 35 Barb., 515; 22 How., 87. Where by the terms of the contract, the property has not passed to the buyer in the thing which the vendor has agreed to sell, the buyer's remedy for the breach of the

vendor's promise, is the same as that which exists in all other cases of breach of contract. He may recover damages for the breach. Benjamin on Sales, 664; Sedg. Dam., pp. 272, 274.

The contract on the part of Hunter to pay for the cattle, "provided they were in every way as good as represented to be by Hunter," did not by any means change the liability of either of the parties under the contract; it was simply expressing in terms what the law implies from such a contract. If Lee had fulfilled his contract, and Hunter had failed, then Lee would have a right of action against Hunter for his damages; and on the other hand if Hunter was ready and willing to perform his contract, and Lee had failed, then Hunter would have a right to rescind the contract, or affirm it, and bring suit for damages. Where the purchaser declares specially for the breach of the contract, and thereby affirms it, as in this case, the rule of damages is the value of the property at or about the time it is to be delivered, less of course, the contract price. 5 Watts & Serg., 106.

*Case & Putnam*, for defendant in error:

1. In the third instruction given, the court charged the jury: "You will decide from the evidence whether the contract between the plaintiff and the defendant was an absolute, or a conditional one. If it was only a *conditional* one, (as is claimed by the defendant,) the plaintiff cannot recover any damages for the alleged breach of the contract. In that case your verdict will be only for the balance due on the cattle received by defendant." The jury returned a verdict *only for this balance*, with interest thereon, showing that the jury held the contract to be conditional, and only binding to the extent of the property which passed.

2. Under a conditional contract Hunter would not be bound to take the cattle unless of a quality to suit him; nor could he maintain an action for damages if part of the cattle proved of inferior quality, and Hunter for this reason refused to accept or pay for them. Story on Contr., §§ 26 to 33;

2 Kent's Commentaries, 469, 474; 4 Kas., 476; 29 N. Y., 358.

The answer sets up, and the instruction asked supposes, an *executory* contract, a *conditional* contract, and a *severable* contract. Hunter is to receive the cattle if of a certain quality, and to pay for what he should get. He did receive part, and refused part. The contract was binding so far as ratified by him, but rescinded as to the balance. "The whole quantity is not of the essence of the contract." Story on Contr., p. 5, §§ 21, 24, and p. 19, note 1 to § 24. There was no error of which Hunter can complain.

The opinion of the court was delivered by

BREWER, J.: Lee sued Hunter to recover $4,027.24 damages, for an alleged failure on the part of Hunter to receive and pay for a lot of cattle according to contract. Hunter in answer to the petition, admits that in July 1870 he made a contract with Lee for the purchase of 840 head of cattle, for which he agreed to pay three-and-three-fourths cents per pound, gross weight, on delivery at the depot of the Kansas Pacific Railway Co. at Topeka, Kansas, to be delivered and weighed on or before the first day of October 1870; also, that at the time of making said contract he paid Lee on the same $1,000, and that about the 21st of September 1870 he received on the contract 272 head of the cattle, amounting to $12,777.37, and that he paid Lee at that time, on the contract, $10,000. He denies all the other allegations in the petition. Hunter for a second answer, and by way of defense, sets out that the sale was by sample and warranty, and he avers that the cattle were not according to contract. And for a third defense, and by way of counterclaim, he sets up a contract of sale by sample and warranty, and claimed $10,000 damages for a failure on the part of Lee to deliver the cattle according to contract. To these several answers Lee interposed a general denial. The case was tried upon these several issues, by a jury, at the December Term 1871 of said court. A verdict was given in favor of Lee for $1,936.97, and judgment was rendered thereon by the court.

The questions presented for our consideration arise on the refusal of one, and the giving of another, instruction. If the one given was correct it was right to refuse the other. Our inquiry therefore is limited to a simple matter. The instruction given was as follows:

"That upon the allegations made by the defendant (Hunter,) in his answer and the evidence he has offered, you cannot find that Hunter is entitled to damages for any breach of contract on the part of Lee."

The third defense in the answer was substantially, that in July 1870, the plaintiff represented to him, defendant, that he was the owner of a large number of cattle, in three different lots of about 300 in each lot, and that he was anxious to sell the same to defendant; that plaintiff showed to defendant a sample of his cattle, and as an inducement to get defendant to purchase the cattle, represented to defendant that the residue of the cattle were as good as the sample shown; that defendant, relying on said representations, and believing them to be true, agreed with the said plaintiff to buy of him 840 head of said cattle, and to pay therefor three-and-three-fourths cents per pound gross weight, to be paid for at the time and place of delivery, as alleged, provided said cattle were in every way as good, large and fat as they were represented to be, and upon no other terms, conditions or consideration whatever; that the said plaintiff then agreed to sell the same to defendant upon the terms and conditions aforesaid, and agreed to deliver and weigh the same to defendant at the depot of the K. P. Rly. Co. at Topeka, Kansas, on or before the 1st of October 1870; that defendant at the time of making the agreement paid plaintiff on said cattle, $1,000; that about the 21st of September 1870, the plaintiff delivered to the defendant 272 head of said cattle, and at that time the defendant paid the said plaintiff the further sum of $10,000. It is also averred in said answer that the defendant duly performed all the conditions of said agreement on his part; that he has always been ready and willing to accept the residue of said cattle so purchased, and to pay the price he agreed

20—11 KAS.

to, but that the said plaintiff did not on the first day of October 1870, or at any other time, deliver or offer to deliver to the defendant the residue of said cattle as he agreed to. And defendant further averred that the residue of said cattle claimed to be owned by plaintiff, as aforesaid, were greatly inferior in quality and value to the sample or lot exhibited as aforesaid, and were wholly unfit and worthless to the defendant, of all which the plaintiff well knew when he made the representations aforesaid; that by reason of the failure of the plaintiff to comply with and perform his said agreement, and by reason of the false and fraudulent representations of the plaintiff, he has sustained damages to the amount of $10,000. Hunter's testimony as to the contract was, that "We parted with the understanding that if I did not see the other cattle I was to take them if the two herds we had seen were a fair sample." He also testified that the cattle other than those he did take were inferior, of less value, unfit for the purposes for which he was buying, and in no ways equal to the representations of Lee, or to the cattle which he had seen. He also stated that he was ready and willing to receive and pay for cattle of the quality he had contracted for. He did not pretend that he was ready or willing or offered to receive the cattle as they were. Upon this answer and testimony could Hunter recover any damages? We think not. The contract was a conditional one. The condition did not exist. Hunter was not to take the cattle unless they were as represented. They were not as represented. Therefore there was no sale. Lee's representations were false, but no action will lie therefor. There was no breach of contract on his part. He agreed to sell these cattle. He was ready to complete the sale. Hunter was unwilling, and declined. A distinction must be noted between this contract and one to deliver so many cattle of a given quality. In that case if he failed to deliver such cattle there would be a breach of his contract. Here was a contract to deliver certain specific cattle. He was ready to deliver those cattle. Hence he was not in default. By reason of the falsity of his representations

he could not compel Hunter to receive the cattle, nor recover damages for his refusal; nor could Hunter, declining to receive them, recover damages on account of such false representations. The judgment of the district court will be affirmed.

All the Justices concurring.