WILLIAM B. COIT AND WILLIAM A. COIT, *Partners, &c.,* v. M. SCHWARTZ.

1. BUYER *May Refuse Goods, When.* Where the goods delivered to the buyer are not of the kind or quality contracted for, the buyer is not obliged to receive and pay therefor.

2. ANSWER; *Sufficient Allegations.* Where the answer alleges that the plaintiffs promised and agreed to sell and deliver to the defendant, at a place mentioned, four thousand pounds of pure white-lead paint for the sum of $220 to be paid by the defendant; that it was specially understood by the parties to the contract that the paint was to be pure white lead, without adulteration; that the defendant was not to accept the same if not pure; that thereafter the plaintiffs sent a lot of paint to the defendant, which, upon being received she examined, and discovered it was not pure, but white lead adulterated with other, cheaper and inferior ingredients; and as soon as she discovered that the paint furnished was not what had been contracted for, she notified plaintiffs she would not accept.

it: *Held*, That the answer sets forth that the paint was not of the quality contracted for.

3. GOODS NOT OF QUALITY ORDERED; *Vendor Liable for Freight.* Plaintiffs sent a lot of white-lead paint to defendant, which was not of the quality ordered and contracted for; when received, without knowledge as to the quality of the paint, the defendant paid out $36.90 for freight and cartage upon it. Upon examination, the defendant found that the paint was not of the quality ordered, and notified plaintiffs she held the paint subject to their direction. *Held*, That the plaintiffs shipping the paint were liable for all freight and cartage paid out, and the defendant paying the same had a lien on the property for the amount.

4. VENDOR, *When Liable for Damages.* Where a party residing in Chicago, Illinois, entered into a contract to deliver four thousand pounds of white-lead paint paint, of a given quality, to a purchaser in Kansas, and thereafter shipped to such purchaser a lot of paint which was not according to the contract of the parties, which paint the purchaser refused to accept and offered to return, *held*, that the vendor is liable to the purchaser for all damages for failing to deliver the paint called for by the contract.

*Error from Saline District Court.*

ACTION brought by *Coit & Co.* against *Schwartz*, to recover for goods alleged to have been sold and delivered by plaintiffs to defendant. The cause was submitted to the court at the August Term, 1882, upon the defendant's answer and the plaintiffs' demurrer thereto. The answer contained four defenses, viz.: 1. A general denial. 2. Alleged a contract of the plaintiffs, through their duly-authorized agent, with the defendant, whereby plaintiffs, doing business in Chicago, Illinois, agreed to sell and deliver to defendant, at Salina, Kansas, 4,000 pounds of pure white-lead paint for $220, upon the condition that the defendant would not accept the same if it were not pure; that plaintiffs shipped to defendant 4,000 pounds of paint, which they represented to be pure white-lead paint; that the defendant, as soon as she was able, examined said paint, and discovered that it was not pure white lead, but was white lead adulterated with other, cheaper and inferior ingredients; that defendant, as soon as she discovered that the paint furnished was not what had been contracted for, notified plaintiffs that she would not accept it, and tendered the same back to plaintiffs. 3. Referring to and mak-

ing the second defense a part of the third count, defendant alleged that she paid out the sum of $36.90 for freight and cartage on said paint, which sum had not been repaid to defendant, and she claimed a lien upon the paint therefor. 4. Referring to and making the second defense a part of the fourth count, defendant alleged that plaintiffs agreed to furnish defendant 4,000 pounds of pure white-lead paint, and to deliver the same to defendant within thirty days after March 13, 1882; that plaintiffs had wholly neglected to comply with said contract; that at the time when said paint should have been delivered at Salina, pure white lead was then and there worth six and one-half cents per pound; that by reason of the failure of plaintiffs to fulfill their contract, the defendant was compelled to and did go into the market and purchase pure white lead instead of that which plaintiffs should have furnished, for which she paid six and one-half cents per pound, that being the lowest price at which the same could be purchased, to defendant's damage $40. Wherefore, defendant prayed judgment against the plaintiffs for $76.90, with interest from April 4, 1882. To each of the several defenses, except the first, set forth in the answer the plaintiffs interposed a demurrer, for the reason that said several defenses did not state facts sufficient to constitute a defense to the plaintiffs' cause of action. The demurrer was overruled by the court. The plaintiffs claim that the court erred in overruling the demurrer, and they bring the case here. Other facts are stated in the opinion.

*Mohler & Gilkeson*, for plaintiffs in error.

*Garver & Bond*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: In support of the demurrer filed by the plaintiffs in this case, it is said, first, that if the defense set forth in the second count of the answer be based on a breach of warranty, it is defective in failing to allege as a fact that the lead paint contracted for was not pure. The allegations

upon this point are, that the defendant, "as soon as she was able, examined the paint and discovered that it was not pure white lead, but was white lead adulterated by other, cheaper and inferior ingredients, and that on the second day of April, 1882, as soon as she discovered the paint furnished was not what had been contracted for, she notified plaintiffs that she would not accept it, and duly tendered the same back to them." At the time of the contract concerning the paint it was at Chicago, in the state of Illinois, and therefore not subject to inspection by Schwartz. Strictly speaking, there was in fact no warranty concerning it. But it is clearly apparent from the allegations that the article delivered was not the article contracted for, and therefore, while neither fraud nor warranty in the strict sense of the law is charged, a condition is set forth, the performance of which is precedent to any obligation upon the vendee under the contract. That is, the existence of the quality of purity, being a part of the description of the thing sold, became essential to its identity, and the defendant was not obliged to receive and pay for an article different from that for which she contracted. (Benjamin on Sales, §§ 600 and 895.) The allegations in the answer that the defendant examined the paint and discovered it was not pure, but white lead adulterated by other, cheaper and inferior ingredients, and that as soon as she discovered that the paint furnished was not what had been contracted for, she notified plaintiffs that she would not accept it, as against the challenge by demurrer are a sufficient charge that the white-lead paint was not pure, and was an article different from that contracted for.

II. As to the defense claiming a lien on the lead for freight and cartage paid, we see no good reason why defendant is not entitled to recover therefor. The plaintiffs sent a quantity of lead paint to the defendant, which was not according to the contract of the parties. When received, without knowledge as to the character of the paint, the defendant paid out $36.90 for freight and cartage. (*Barnett v. Terry*, 42 Ga. 83.) Where the seller ships goods or other articles to a purchaser

ordered to be sent to him, who receives the same, paying freight and cartage thereon, and on examination finds that the goods or articles sent are not according to order, and he at once gives notice to the seller of this fact, and that he holds the same subject to his direction, the party shipping is bound for all the freight and cartage paid out. (*Rucker v. Donovan*, 13 Kas. 251.)

III. It is urged that the defendant is not entitled under the allegations of the answer to recoup damages, and that therefore the fourth count is fatally defective. It appears from the answer, that the plaintiffs promised and agreed to sell and deliver to the defendant, at Salina, within thirty days after March 13, 1882, 4,000 pounds of pure white-lead paint, and that the defendant agreed to pay therefor the sum of $220. It further appears that the plaintiffs wholly refused and neglected to comply with the contract, and that at the time when the paint should have been delivered it was worth at Salina $6\frac{1}{2}$ cents per pound. The attempt to impose upon the defendant adulterated white lead in place of the article contracted for was no compliance with the agreement, and defendant is entitled to recover the damage she has sustained by the breach of the contract. The case of *Hunter v. Lee*, 11 Kas. 292, is not applicable here. In that case there was a contract to deliver certain specific cattle. The plaintiff was ready to deliver those cattle, hence he was not in default. By reason of the falsity of his representations he could not compel the defendant to receive the cattle, nor recover damages for his refusal. Here, the contract was to deliver a certain number of pounds of paint, of a given quality. The particular kegs delivered were not those contracted for, and the vendor did not deliver paint of the quality called for by the contract.

The ruling and judgment of the district court will be affirmed.

All the Justices concurring.